Walter J. Gresham v. Commissioner.
Gresham v. Commissioner
Docket No. 17738.
United States Tax Court
1949 Tax Ct. Memo LEXIS 284; 8 T.C.M. (CCH) 77; T.C.M. (RIA) 49017; January 25, 1949
Walter J. Gresham, pro se. Elmer L. Corbin, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency of $1,161.08 for the taxable year 1943. Petitioner claims a refund of $593.40 for income taxes paid in 1943. The taxable year 1942 is involved because of the Current Tax Payment Act. The questions presented are: (1) Is the petitioner entitled to the benefits of section 107 of the Internal Revenue Code in reporting attorneys fees in the amount of $1,983 received in October 1942 for services rendered over a period of 99 months prior thereto? (2) Did petitioner realize a profit on the disposal of his interest in the Western Tool & Manufacturing Co., a partnership, in 1943 and, if so, did the profit represent *285 capital gain or ordinary income? Findings of Fact Petitioner is an individual with residence at Kansas City, Missouri. His returns for the periods here involved were filed with the collector of internal revenue for the sixth district of Missouri at Kansas City, Missouri. In July 1934 petirtioner, who is and was an attorney at law, undertook to represent a client in a suit on an insurance policy and agreed to be paid on a contingent fee basis. In the event of his success he was to receive fifty per cent of the amount recovered and nothing if no recovery was made. Petitioner worked on the case for 99 months and the collection was made in October 1942. His fee was $1,983 and he reported as income in 1942, $193.50 as follows: "Amount collected covered services of 10 months in 1942 and 89 months from July 1934 and following years. Under sec. 107, Internal Revenue Code, 1942, apportioned income earned in 1942 was $193.50 which I have listed in gross income." Petitioner's employment in the litigation called for the performance of the whole job and was to continue until the case was finished. His work was continuous over the entire period and he drew no money *286 on the contract until the case was finished. Petitioner's return for 1942 contained no computation of the tax attributable to the compensation earned in the prior years as if such compensation had been then received. He either had kept no books of account during 1934 and 1935, or had lost these books prior to the examination of his 1942 return. He had paid no income tax prior to 1942 and no income tax returns were placed in evidence. At the time of the examination of his 1942 return he delivered to the Commissioner his cash book for the years 1936 to 1942, inclusive, which was his only book of account showing his receipts and disbursements. This book was not in evidence. In the early part of 1943 petitioner orally agreed with one Frank P. Tise, an experienced steel processor, who then had a contract for the production of airplane parts and was in need of funds to buy machinery, to lend the said Tise an amount up to $15,000. Thereafter Tise and petitioner modified said oral agreement by entering into written articles of partnership dated February 12, 1943. The partnership was to be known as Western Tool & Manufacturing Co. Petitioner, as party of the first part, agreed to supply *287 $10,000 "which sum shall be a loan to the company." The agreement provided that out of the earnings monthly payments should be made to petitioner to be applied on said loan until the sum should be paid off and that Tise should have a drawing account of $75 per week which should be a charge against his salary which was fixed at $10,000 per year. The contract then provided: "It is agreed that after the aforesaid loan of $10,000 has been paid to party of the first part and after the aforesaid salary has been paid to Frank P. Tise the net amount of profits from said business shall be divided one half to party of the first part and one half to party of the second part above named and said business shall be owned by the parties hereto in the same proportions just stated." The agreement further provided that Tise should "have the right to purchase the interest of the party of the first part at an equitable price to be determined later by the parties." Tise was to operate the business, devoting his entire time to it. Petitioner agreed to do nothing except countersign checks which he insisted upon as a protection to him from the dissipation of the money lent. In fact, during 1943 before *288 the partnership was dissolved he rendered some legal services to the partnership and charged and was paid $1,000 therefor. The loan was paid in full prior to the end of July 1943 and early in August 1943 Tise exercised his option to purchase petitioner's interest in the partnership. The price agreed upon for petitioner's one-half interest was $6,000, which amount was paid to petitioner on August 20, 1943, and a bill of sale was given to Tise whereby Gresham sold "All of my undivided interest in and to the Western Tool & Manufacturing Company, 94 Wilson Road, including good will, all equipment, accounts receivable and assets of every nature and kind, the purchaser assuming all bills payable, taxes, liens and liabilities of every sort and agreeing to hold grantor harmless from every claim which may be asserted against said Western Tool & Manufacturing Company arising out of the operation thereof as a partnership." In his income tax return for 1943 petitioner reported the transaction and included $3,000 in his taxable income as long-term capital gain. The Commissioner determined that the entire amount of $6,000 was ordinary income on the theory that it represented partnership income. *289 In his notice of deficiency the Commissioner found that at the time of the sale petitioner's share of the partnership profits was $7,021.64. At no time prior to the sale did petitioner receive any distribution of profits from the partnership nor had he sought an accounting therefor. In his petition herein the petitioner alleges that the partnership interest was a gift to him by Tise for which he gave nothing, rendered no services, and that the interest which Tise gave him cost Tise in excess of $6,000 and that no gain was realized by petitioner; wherefore he asks for a refund in the amount of $593.40, taxes paid by him, on the theory that the $6,000 received by him was a long term capital gain. Opinion Petitioner claims the benefit of the distribution of income received in 1942 for the 89 months preceding 1942, for the purpose of income taxation, according to the provisions of section 107, I.R.C. cited in the margin. [1] Neither party has cited us any authorities having any appreciable application to the facts at bar and, in view of the unusual facts in this case, it would be difficult to find their duplication. *290 Petitioner herein, a practicing attorney, has introduced no persuasive evidence that he kept any books in 1934 or 1935. He kept a so-called cash book covering 1936 to 1941, inclusive. He has produced no copies of any income tax returns filed during those years and no persuasive evidence that returns were filed. His entire testimony on the tax status of his income from 1935 to 1941, inclusive, is as follows: "I was a married man and during most of those years I had three minor children; * * * my exemptions ran from $2,000 to $2,500 during that time; * * * my office expenses ordinarily ran from $500 to $800 a year and I think my largest income was about $2,000." He furthermore testified that during part of the time he "had three children in college." He also stated that during 1934 and 1935, when he could not produce any records, he was in the midst of a depression and was sure that his income in each year did not exceed $2,000.0 He testified that at the time of the examination of his books he turned over to the examiner his cash book which he says conclusively showed that he had no taxable income during the years covered by it. Petitioner represented himself at the trial *291 but introduced no corroborating testimony whatsoever on the issue of the taxation of the fee received in 1942. If the Court had access to the cash book, it might be able to arrive at some idea as to the petitioner's income for the years covered by the cash book. However, as to the year 1941, when the petitioner's exemption was but $1,500, under petitioner's own testimony there would probably have been some tax payable in 1941. In his petition he alleges "that up to and including 1939 he was married and had one minor dependent." It would appear from that statement that he had no dependents during the year 1941 other than his wife. For the years 1934 and 1935 we have nothing at all upon which to find in favor of the petitioner. The requirements of section 107, I.R.C. are clear and it is the responsibility of the petitioner by testimony to bring himself within those requirements. This he has not done and our finding must be for the respondent. In the second issue in this case pertaining to the taxability of income, if any, growing out of the sale by the petitioner of his interest in the Western Tool & Manufacturing Company we are again unable to gain much help *292 from the authorities cited. Although the petitioner originally reported in his 1943 income tax return the receipts from the sale of his partnership interest as capital gains, he now contends that the money which he received was from the sale of property which he had received as a gift from Tise and that the cost base to Tise was $7,500. Therefore petitioner claims he realized no capital gain and asks that the tax which he paid on the theory that he had realized a taxable gain be refunded to him. The Commissioner contends that, inasmuch as the petitioner had contributed no capital to the partnership and the share of the partnership income at the date of the petitioner's withdrawal therefrom allocable to the petitioner was $7,021.64, the $6,000 which petitioner received is all taxable to him as ordinary income. The respondent relies on Helvering v. Smith, 90 Fed. (2d) 590, which was a case involving a lawyer who withdrew from a law partnership having made no initial capital contribution to said partnership and having received only his share of the earned income up to the time of his withdrawal. In that case the partnership contract provided that the retiring partner *293 should receive no portion of the assets of the partnership which should be retained by the continuing partners. Since in that case the taxpayer received nothing but his share of the earned income prior to his withdrawal, the case is distinguishable from the case at bar. The Commissioner also relies upon Louis Karsch, 8 T.C. 1327, in which a "partnership at will" was dissolved, a complete audit made of the partnership assets at the time of dissolution and an exact valuation fixed upon the capital assets and the earned income during the period of the partnership. This Court held that the portion of the amount received by the taxpayer which the audit disclosed was attributable to income should be taxed as income and that portion which the audit disclosed as capital gain should be taxed as capital gain. Here again we find little relevance to the facts in the case at bar. We agree very much with the respondent and disagree with the petitioner on the proposition that petitioner's interest was not a gift from Tise. The agreement between Tise and petitioner was reduced to writing and our conclusion must be based upon that written agreement. By that agreement petitioner was *294 obligated to loan $10,000 and in return for this promise he was to receive a one-half interest in the capital and income of the partnership after Tise had been paid a $10,000 annual salary and after the loan was repaid. We can see nothing in such an agreement on which to base any gift. It was strictly a quid pro quo arrangement. It is our conclusion that the petitioner herein procured his half interest in the former sole proprietorship business of Tise as compensation for his promise to render future services. The value of the half interest which he received, if a value therefore could be established, would be income to the petitioner in the year in which it was received. However, there is nothing in the record in this case to show that said half interest acquired by Gresham had any value other than a purely speculative one at the time it was received. We conclude that its value should be accepted for the purpose of income tax as zero. When that one-half interest was sold by the petitioner on August 20, 1943, the bill of sale provided for the transfer to Tise of an undivided one-half interest in good will, equipment and machinery, accounts receivable and assets of every kind and *295 nature. In short, Gresham sold to Tise all the interest he had in the partnership at that time. At that time he had no interest in the partnership income or capital which he could enforce. According to the determination of the Commissioner herein the income of the partnership up to the date of sale was $14,043.28. Out of that amount $10,000, plus an indeterminate amount of interest had been paid in satisfaction of the note, leaving approximately $4,000 which could be applied on Tise's salary. There is some testimony in the record that in addition to the $10,000 loaned by the petitioner under his written agreement he also loaned an additional $5,000 which had also been repaid in full at the time the petitioner sold his interest in the partnership. If such is the case, then the estimate of the Commissioner that but $14,043.28 had been earned prior to the sale is slightly lower than the facts would warrant and at the time of the sale nothing would be left to apply on Tise's salary. However, whether the amount of the loan was $10,000, as stipulated in the contract, or $15,000 as orally brought out in the testimony, the petitioner had no right to any income from the partnership and only *296 a contingent interest in the partnership capital until Tise's salary was paid in full. On August 20, 1943, when, if ever, that salary would be paid in full was quite a speculative matter. It involved the future earnings of an amount somewhere between $6,000 and $10,000 and when the petitioner sold his interest in the partnership it might well have appeared to him that his prospects of ever receiving even a vested interest in the partnership capital was quite remote. It is therefore our conclusion that the interest which the petitioner sold on August 20th was not an interest in income but was a contingent interest in the partnership capital. It was an interest which Gresham had received in payment for services to Tise and at the time of receipt had no ascertainable value. It was a sale of a capital asset which the petitioner held for more than six months and it should be correctly taxed as a long-term capital gain. Decision will be entered under Rule 50. Footnotes
1. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. (a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.↩